**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**

UNITED STATES OF AMERICA,

Plaintiff,

v. No. 2:25-cr-00549-KG-1

RUBEN JOSE TRUJILLO,

Defendant.

**MEMORANDUM OPINION AND ORDER DENYING MOTION TO RECONSIDER**

This matter is before the Court on Defendant Ruben Trujillo's Motion to Reconsider Doc. 67- Memorandum and Order as to the Searches of the Residence and Vehicles, Doc. 86 ("Motion to Reconsider"). In its Memorandum Opinion and Order, Doc. 67, the Court concluded officers had probable cause to arrest Trujillo and denied Trujillo's Motion to Suppress, Doc. 56. Trujillo now argues that the Court must prevent manifest injustice by determining whether the state search-warrants issued on October 29, 2024, established probable cause to search the residence at 2923 Los Amigos Court in Las Cruces, New Mexico, and two vehicles, a 2018 Ford F-150 and a 2013 Ford Edge. Doc. 86 at 1, 3–8. He seeks to suppress all evidence obtained from the search of 2923 Los Amigos Court and the vehicles. *Id.* at 1. The Government responded and does not oppose the Trujillo's request to suppress the evidence retrieved inside the residence and the Ford Edge. Doc. 87 at 1. The issue the Court must decide is whether evidence retrieved from the Ford F-150 should be suppressed under the Fourth Amendment. *Id.* at 1, 6. For the reasons below, the Court denies the Motion to Reconsider and will not suppress the evidence retrieved from the Ford F-150.

## *I. Findings of Fact*

Trujillo does not contest the Court's previous ruling that the Doña Ana County Sheriff's Office ("DASO") had probable cause to arrest him on October 29, 2024. *See* Doc. 86; Uncertified Draft Transcript of Oct. 8, 2026 Hearing ("Draft Tr.") at 84:13-14.[1] The Court hereby incorporates by reference its factual findings from the previous February 3, 2026, evidentiary hearing. *See* Doc. 67 at 1–3. On October 8, 2026, the Court held a second evidentiary hearing at which Detective Antonio Luna of DASO testified. *See* Draft Tr. at 10:1-76:19. The Court continues to find Detective Antonio Luna's testimony to be credible, especially given the consistency between his testimony and the available video footage submitted as evidence. Doc. 67 at 5 ("[T]he Court finds Detective Luna's testimony credible.").[2]

On October 28, 2024, an individual broke into a Family Dollar store in Vado, New Mexico at approximately 9:45 p.m. Doc. 67 at 1; Draft Tr. at 60:3-5. After forcing entry, the suspect removed a black handgun from his waistband and pointed it at two employees, who ran to a back room and locked the door. Doc. 67 at 1–2; Gov. Ex. 1.1 at 0:48-1:04 (Family Dollar Security Footage, Entrance Camera); Gov. Ex. 1.2 at 0:58-1:02 (Family Dollar Security Footage, Cash Register #2); Gov. Ex. 1.3 at 0:58-1:03 (Family Dollar Security Footage, Height Strip by Door); Gov. Ex. 1.4 at 0:01-0:06 (Family Dollar Security Footage, Manager's Office). The suspect fired a shot at the door. Doc. 67 at 2; Gov. Ex. 1.4 at 0:01-0:06. He then removed money from an open

---

[1] The Court's citation to the hearing transcript refers to the court reporter's original, unedited version. Any final transcript may contain some differences in page and line numbers.

[2] The Court notes Detective Luna provided new testimony regarding his analysis of other suspects with similar tattoos before identifying Trujillo as the main suspect. Draft Tr. at 52:8-53:9. Detective Luna's testimony regarding his investigation of other suspects should have been raised at the previous February 3 hearing; however, it was not elicited by either party. Regardless, his new testimony would not have changed the Court's ruling that officers had probable cause to arrest Trujillo.

cash register, grabbed a different cash register, and fled the scene. Doc. 67 at 2; Gov. Ex. 1.2 at 1:18-2:20; Gov. Ex. 1.3 at 2:20-2:25. The suspect was wearing a gray hoodie with an emblem on the left side of the chest, a black mask, a white glove, and a black glove. Gov. Ex. 1-1 at 0:07-0:23, 0:51-0:58; Gov. Ex. 1.2 at 2:20-2:24; Draft Tr. at 14:4-15:3. When law enforcement arrived at the Family Dollar and began investigating the scene they collected a .45 Auto Winchester bullet casing. Draft Tr. at 15:9-12.

After identifying Trujillo as a suspect, law enforcement surveilled the residence at 2923 Los Amigos Court around 1:00 p.m. on October 29, 2024. Draft Tr. at 34:22-35:12, 39:14–19; *see also* Doc. 67 at 2-3. The Family Dollar in Vado, New Mexico is approximately a twenty-minute drive from this location. Draft Tr. at 40:17-22. The residence located at 2923 Los Amigos is one of three townhouse units. Doc. 114-1 at 2 (Gov. Ex. 16). Each unit has an attached, enclosed garage with a door. *Id.* at 1–2. There is a driveway made up of gravel and is continuous in front of all of the units. *Id.* A sidewalk is visible at the end of the shared gravel driveway. *Id.*; Gov. Ex. 15 at 0:40-0:46, 2:10-2:14 (Body-worn Camera Footage of DASO Officer Michael Mosley from Oct. 29, 2024).[3] An enclosed courtyard with a gate separates the driveway from the front door of the 2923 Los Amigos residence. Doc. 122-1 at 2, 4, 6 (Def. Exs. A-2, A-4, A-6); Gov. Ex. 15 at 0:50-1:01; Gov. Ex. 17 (Det. Luna Body-worn Camera Footage Oct. 29, 2024) at 0:01-0:25. A short wall is located on one side of the shared driveway. Doc. 122-1 at 1, 6-7; Gov. Ex. 15 at 2:03-2:05, 2:35-2:43; Gov. Ex. 17 at 0:1-0:31. Three mailboxes are also present at the bottom of the shared driveway near the wall. Doc. 114-1 at 1; Doc. 122-1 at 1.

At approximately 5:30 p.m., Trujillo drove up the shared driveway in a dark colored Ford F-150. Draft Tr. at 35:13-19. He parked the Ford F-150 by the wall and in front of the garage and

[3] *See* Draft Tr. at 37:16-38:9.

gate to the enclosed courtyard for 2923 Los Amigos. Draft Tr. at 49:15-51:8. The Ford F-150 was next to four vehicles parked in the shared driveway. *Id.* The wall nor any other structure obstructed the Ford F-150 from public view. *Id.*; Doc. 114-1 at 1-2; Ex. 15 at 2:13- 2:46.

Trujillo exited the Ford F-150 with a woman. Draft Tr. at 35:17-36:4. He carried two car seats into the 2923 Los Amigos residence. *Id.* at 35:20-36:13. Shortly thereafter, Trujillo emerged from the residence. *Id.* at 36:22-37:2. DASO officers, Detective Luna, and FBI Special Agent Chafin Cox arrested him in the shared driveway. *Id.* at 36:15-37:15, 47:12-18; Ex. 15 at 0:36-2:12. When he was apprehended, Trujillo was holding keys to the vehicle in his hands. Doc. 87 at 5–6; Draft Tr. at 44:3-5; Ex. 15 at 0:43-1:01. He did not have a gun, ammunition, cash, or a cash register on his person. Draft Tr. at 41:11-16, 42:1-5. He also did not have a gray hoodie or gloves. *Id.* at 41:17-25. Special Agent Cox escorted Trujillo and stood next to him. *Id.* at 75:18-20. He observed Trujillo was acting strange and fidgeting with the keys "like he was trying to stash them." *Id.* at 47:23-48:10.

Later in the evening of October 29, 2024, officers obtained search warrants for the 2923 Los Amigos residence and the vehicles at the residence. Doc. 67 at 3; Gov. Exs. 12-13. During the search of the Ford F-150, investigators recovered a black Hi-Point .45-caliber pistol between the driver's seat and center console along with .45 caliber ammunition. Doc. 67 at 3; Doc. 87 at 6; Gov. Ex. 13 (Photographs of Oct. 29, 2024, search).

## ***II. Standards of Review***

### ***A. Motions to Reconsider***

Although the Federal Rules of Criminal Procedure do not specifically discuss motions to reconsider, they are permissible in criminal cases. *See United States v. Randall*, 666 F.3d 1238, 1241 (10th Cir. 2011) (citing *United States v. Rollins*, 607 F.3d 500, 502 (7th Cir. 2010)). "This

dispensation recognizes that 'a district court should have the opportunity to correct alleged errors in its dispositions.'" *United States v. Gonzalez*, No. 1:22-cr-00896-MLG-3, 2026 WL 2569334, at *3 (D.N.M. Aug. 31, 2026) (quoting *United States v. Christy*, 739 F.3d 534, 539 (10th Cir. 2014)). Motions to reconsider should not be filed "to revisit issues already addressed or advance arguments that could have been raised earlier." *Christy*, 739 F.3d at 539. "A motion to reconsider is appropriate in those limited instances when the court has misapprehended the facts, a party's position, or the law." *Gonzalez*, 2026 WL 2569334, at *3 (citing *Servants of Paraclete v. Does*, 204 F.3d 1005, 1012 (10th Cir. 2000)). "Specific grounds include: (1) an intervening change in the controlling law, (2) new evidence previously unavailable, and (3) the need to correct clear error or prevent manifest injustice." *Christy*, 739 F.3d at 539 (internal quotation marks omitted) (quoting *Servants of Paraclete*, 204 F.3d at 1012).

### *B. Motions to Suppress*

"The proponent of a motion to suppress bears the burden of proof." *United States v. Clarkson*, 551 F.3d 1196, 1200 (10th Cir. 2009) (citation omitted). However, the burden shifts to the United States to show, by a preponderance of the evidence, that the defendant's Fourth Amendment rights were not violated. *United States v. Matlock*, 415 U.S. 164, 177 (1974) (concluding the United States "sustained its burden of proving by the preponderance of the evidence that" search did not violate Fourth Amendment).

"Judging the credibility of the witnesses, determining the weight to be given to evidence, and drawing reasonable inferences and conclusions from the evidence are within the province of the district court." *United States v. Hunnicutt*, 135 F.3d 1345, 1348 (10th Cir. 1998). Factors beyond a witness's demeanor and tone of voice may weigh in a judge's decision to find that witness's testimony credible, including "[d]ocuments or objective evidence [that] may contradict

the witness' story; or the story itself may be so internally inconsistent or implausible on its face that a reasonable factfinder would not credit it." *Anderson v. City of Bessemer City, N.C.*, 470 U.S. 564, 575 (1985).

***III. Discussion***

Trujillo raises a new argument in his Motion to Reconsider regarding the sufficiency of the search warrant affidavits. Doc. 86 at 1 (admitting Court's prior opinion "rests on a premise this briefing did not test"); *compare* Doc. 56 *with* Doc. 86. The Motion to Reconsider is therefore improper on its face because this argument could have been presented to the Court in the initial Motion to Suppress. *See Christy*, 739 F.3d at 539. The Court, however, recognizes that Trujillo was represented by different counsel when he filed his Motion to Suppress. *See* Doc. 56 at 3; Doc. 86 at 8. The Court will therefore address the merits of the new argument.

Trujillo contends that the search warrant affidavit fails to establish probable cause to search the residence and the vehicles parked there. Doc. 67 at 1. While probable cause may have existed to arrest Trujillo, he asserts there must be additional evidence linking the residence and vehicles to the Family Dollar robbery. Doc. 86 at 4-7; *see id*. at 4 (citing *United States v. Rowland*, 145 F.3d 1194, 1204 (10th Cir. 1998)). He argues that the only nexus between the residence and vehicles and the Family Dollar robbery is that Trujillo arrived at the residence in the Ford F-150 twenty-four hours after the robbery. Doc. 86 at 7. Trujillo claims this is insufficient factual support for a warrant to search the residence and vehicles. *Id.*

The Government asserts that officers had probable cause to search the Ford F-150 parked on the driveway for evidence of the Family Dollar robbery. Doc. 87 at 7, 12–13. It does not rely on the October 29, 2024, search warrants to justify the search of the vehicle. *Id.* at 7. Rather, the Government argues the Ford F-150 was outside the residence's curtilage and, as a result, no search

warrant was required because probable cause existed to support the automobile exception to the Fourth Amendment. *Id.* at 7-15. The Court agrees with the Government.

***A. The shared driveway was outside the curtilage of the residence.***

The Fourth Amendment protects the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures[.]" U.S. Const. amend. IV. This protection extends to the area "immediately surrounding and associated with the home" also known as the "curtilage." *Florida v. Jardines*, 569 U.S. 1, 6 (2013). "'The protection afforded the curtilage is essentially a protection of families and personal privacy in an area intimately linked to the home, both physically and psychologically, where privacy expectations are most heightened.'" *Collins v. Virginia*, 584 U.S. 586, 592–93 (2018) (quoting *California v. Ciraolo,* 476 U.S. 207, 212–213 (1986)). "When a law enforcement officer physically intrudes on the curtilage to gather evidence, a search within the meaning of the Fourth Amendment has occurred. Such conduct thus is presumptively unreasonable absent a warrant." *Id.* at 593 (citation modified).

The Ford F-150 in this case was parked in a driveway in front of the residence located at 2923 Los Amigos. *See* Doc. 114-1 at 1 (Gov. Ex. 16). The Court must therefore determine whether officers intruded in the curtilage of the home when they searched the Ford F-150.

There are four factors courts consider when assessing whether an area is within the curtilage of a home: (1) "the proximity of the area claimed to be curtilage to the home," (2) "whether the area is included within an enclosure surrounding the home," (3) "the nature of the uses to which the area is put," and (4) "the steps taken by the resident to protect the area from observation by people passing by." *United States v. Vasquez*, No. 22-1294, 2024 WL 34132, at *2 (10th Cir. Jan. 3, 2024) (citation modified) (quoting *United States v. Dunn*, 480 U.S. 294, 301 (1987)). The four factors are not a "finely tuned formula," but "are useful analytical tools only to

the degree that, in any given case, they bear upon the centrally relevant consideration—whether the area in question is so intimately tied to the home itself that it should be placed under the home's 'umbrella' of Fourth Amendment protection." *United States v. Cousins*, 455 F.3d 1116, 1122 (10th Cir. 2006) (citation modified) (quoting *Dunn*, 480 U.S. at 301).

Here, the driveway is directly in front of the residence and is several feet away from the entry of the home itself. *See* Doc. 114-1 at 1; Gov. Ex. 17 at 0:25-0:32; Doc. 122-1 at 3. The enclosed and gated courtyard creates some distance between the front door and the driveway, but it does not appear to be a significantly large area. Doc. 122-1 at 2, 4, 6; Gov. Ex. 15 at 0:50-1:01; Gov. Ex. 17 at 0:01-0:25. The Court therefore finds that the driveway is in close proximity to the home. This factor alone, however, does not establish the driveway is part of the curtilage. *See Vasquez*, 2024 WL 34132 at *2–3 (finding first factor of proximity favored defendant but all remaining factors demonstrated driveway was not curtilage); *United States v. Watkins*, 156 F.4th 1049, 1051-54 (10th Cir. 2025) (finding open-air walkway few feet outside motel room was in "close proximity" to home, but ultimately concluding remaining *Dunn* factors indicated it was not within curtilage of room).

The driveway is not enclosed nor is it protected from observation. Doc. 114-1 at 1–2. The driveway is part of an area that is easily visible and accessible to others—especially the occupants of nearby townhouses. *Id.* at 2; Gov. Ex. 15 at 0:35-0:54, 2:30-2:45; Gov. Ex. 17 at 0:25-0:32; Doc. 122-1 at 1. Four other vehicles were parked in the same continuous driveway on October 29, 2024.[4] Doc. 114-1 at 2. There no walls, structures, or other markings separating the driveway for

---

[4] Trujillo relies on records from the Doña Ana County Assessor regarding the legal description of the lot that 2923 Los Amigos Court sits on. *See* Doc. 122 at 2; Doc. 122-1 at 8-11. Trujillo asks the Court to take judicial notice of the facts regarding the boundaries of the lot and that it is divided into three townhouse lots. Doc. 122 at 3. The Court does so pursuant to Federal Rule of Evidence 201(c)(2). While Defense Exhibits B through E were entered into evidence, Trujillo fails to

each unit. *Id.* at 1-2; Gov. Ex. 15 at 2:35-2:46. The short wall located on the side of the driveway where the Ford F-150 was parked does not enclose the driveway, obstruct it from view, or prevent a person from accessing it. Doc. 122-1 at 1, 6-7; Gov. Ex. 15 at 2:35-2:43; Gov. Ex. 17 at 0:01-0:31. Detective Luna easily stepped over the wall and walked down the driveway past the Ford F-150 following Trujillo's arrest. Gov. Ex. 17 at 0:10-0:31. At all times, the places where the officers stepped on the driveway could be readily seen by anyone on the public street.[5] *See* Draft Tr. 50:22-51:5; Doc. 114 at 1-2; Gov. Ex. 15 at 2:13-2:46. The Court therefore concludes the characteristics of this shared driveway do not support a finding of curtilage under the second or fourth *Dunn* factors. *See Vasquez,* 2024 WL 34132 at *2–3 (concluding no enclosure surrounded nor other structure obstructed shared driveway between two homes).

Finally, the Court concludes the driveway is not used for an "intimate activity associated with the sanctity of a man's home and privacies of life." *Dunn*, 480 U.S. at 300 (citation modified). No evidence has been offered demonstrating the driveway is used for any purpose other than to park a vehicle and walk into the gated courtyard. The driveway is visible and accessible to the

explain how these facts or exhibits are relevant to determining whether the driveway is part of the curtilage of the home. Draft Tr. at 69:8-17, 82:21-87:14. The legal boundaries of the lot are irrelevant to this inquiry. Instead, the factors to consider are whether the area is close in proximity to the home, whether it is in an enclosure, the use of the area, and the steps taken by the resident to protect the area from observation. *Vasquez*, 2024 WL 34132 at *2.

[5] Trujillo asserts that an area can still be curtilage if it is visible to the public. He relies on a visible front porch deemed to be curtilage in *Jardines*, 569 U.S. at 569 at 6-7. Draft Tr. at 86:23-87:9. Trujillo, however, fails to consider the third *Dunn* factor—the nature of the use of the area. *Dunn*, 480 U.S. at 301. The different use for a front porch compared to a driveway is critical. The front porch "is the classic exemplar of an area adjacent to the one and to which the activity of home life extends." *Jardines*, 569 U.S. at 7 (citation modified). Driveways visible to the public that are only used to park vehicles and access the home are consistently found not be activity tied to the home. *See Vasquez,* 2024 WL 34132 at *2 (collecting cases that shared driveways are not curtilage); *Rieck v. Jensen*, 651 F.3d 1188, 1191–93 (10th Cir. 2011) (finding officer did not enter home's curtilage when officer only entered portion of driveway).

public. In *Vasquez*, Tenth Circuit ruled that the defendant's use of a shared driveway to walk into his home did not constitute "activity intimately tied to the home." 2024 WL 34132 at *2; *see also Jensen*, 651 F.3d at 1193 (10th Cir. 2011) ("[A] driveway abutting and clearly visible from a public highway is not a suitable setting for intimate activities associated with a home."); *accord United States v. Coleman*, 923 F.3d 450, 455–57 (6th Cir. 2019) (ruling shared driveway was not curtilage); *United States v. Jones*, 893 F.3d 66, 72–73 (2d Cir. 2018) (same). The same logic applies here as the driveway is used for parking multiple vehicles associated with separate residential properties and walking to the enclosed and gated courtyard. *See United States v. Dorsh*, No. 24-cr-40038-TC, 2025 WL 2051014, at *4-5 (D. Kan. July 22, 2025) (ruling the end of a driveway near a public street was not curtilage).

The Court concludes that the *Dunn* factors weigh against finding that the driveway falls within the home's curtilage. Any argument to suppress evidence in the Ford F-150 based on the sufficiency of the October 29, 2024, search warrants therefore fails. The driveway, including the location where the Ford F-150 was parked, is not subject to the same Fourth Amendment protections as the private space of a home. *See Collins*, 584 U.S. 593; *Vasquez,* 2024 WL 34132 at *3 (concluding since shared driveway was not within curtilage, search and seizure of "the shared driveway did not trigger Fourth Amendment protections"); *cf. Rowland*, 145 F.3d at 1203-06 (evaluating whether supporting affidavit was sufficient to search defendant's residence).

***B. Probable cause existed to search the Ford F-150 for evidence of the Family Dollar robbery.***

The Court must next determine whether law enforcement officers had probable cause to search the Ford F-150 itself. Generally, a warrant based on probable cause must be secured for a search or seizure to be reasonable under the Fourth Amendment. *See United States v. Dalton*, 918 F.3d 1117, 1127 (10th Cir. 2019). Under the automobile exception, "police officers who have

probable cause to believe there is contraband inside an automobile that has been stopped on the road may search it without obtaining a warrant[.]" *Florida v. Meyers,* 466 U.S. 380, 381 (1984) (per curiam). "The 'ready mobility' of vehicles served as the core justification for the automobile exception for many years." *Collins*, 584 U.S. at 591 (citation omitted). Courts, however, recognize the justification to conduct a warrantless search of a vehicle "'does not vanish once the car has been immobilized; nor does it depend upon a reviewing court's assessment of the likelihood in each particular case that the car would have been driven away, or that its contents would have been tampered with, during the period required for the police to obtain a warrant.'" *United States v. Anderson,* 114 F.3d 1059, 1066 (10th Cir. 1997) (quoting *Michigan v. Thomas,* 458 U.S. 259, 261 (1982)); *accord United States v. Williams*, 773 F.3d 98, 105–06 (D.C. Cir. 2014) ("All that is required for an automobile to be readily mobile within the meaning of the automobile exception is that it is used on the highways, or is readily capable of such use." (citation modified)). There is also no requirement that "the warrantless search of a vehicle occur contemporaneously with its lawful seizure." *United States v. Johns*, 469 U.S. 478, 484 (1985).

The crucial element for the automobile exception is whether law enforcement had probable cause. "Probable cause to search a vehicle is established if, under the totality of the circumstances, there is a fair probability that the car contains contraband or evidence." *United States v. Vasquez-Castillo*, 258 F.3d 1207, 1212 (10th Cir. 2001) (citation modified). Additionally, probable cause is measured against an objective standard, "where the known facts and circumstances are sufficient to warrant a man of reasonable prudence in the belief that contraband or evidence of a crime will be found." *Ornelas v. United States*, 517 U.S. 690, 696 (1996). Officers' subjective motivations for the search are irrelevant. *Brigham City v. Stuart*, 547 U.S. 398, 404 (2006). "If police have probable cause to search a car, they need not get a search warrant first even if they have time and

opportunity." *United States v. Ludwig*, 10 F.3d 1523, 1528 (10th Cir. 1993) (citation modified). Also, when probable cause exists, law enforcement may search "every part of the vehicle and its contents that may conceal the object of the search." *United States v. Ross,* 456 U.S. 798, 825, (1982).

Given the totality of circumstances, including that there was probable cause to arrest Trujillo, law enforcement officers had probable cause to search the Ford F-150. The Family Dollar at issue was in Vado, New Mexico, which is approximately a twenty-minute drive from Las Cruces. Draft Tr. at 39:20-25. It was reasonable for law enforcement to believe that a suspect would have traveled via car following the robbery due to this distance. *Id.* Law enforcement was also searching for physical evidence from the Family Dollar robbery in addition to the suspect. It was reasonable for officers to believe the evidence had not yet been disposed of by the suspect given the robbery occurred only the day before. When law enforcement arrested Trujillo, he did not have physical evidence of the robbery on his person. *Id.* at 41:11-16, 42:1-5. Trujillo instead had the keys to the Ford F-150 in his hand. *Id.* at 44:3-5. He then tried to "stash" the keys. *Id.* at 47:23-10; Ex. 15 at 0:43-1:01. Law enforcement therefore observed that Trujillo had access to the Ford F-150 in addition to his suspicious behavior. Consequently, based on the totality of the circumstances, the officers had probable cause to believe that the Ford F-150 contained physical evidence from the Family Dollar robbery.

Trujillo asserts that the officers lacked probable cause because there is no evidence that the Ford F-150 was used or related to the Family Dollar robbery. *See* Draft Tr. at 85:6-13. The automobile exception does not require that the vehicle at issue be an instrumentality of the crime. Instead, all that is required is that probable cause that the vehicle contains contraband or evidence of a crime exists. *See United States v. Phillips*, 71 F.4th 817, 823 (10th Cir. 2023).

## *IV. Conclusion*

For the foregoing reasons, the Court concludes that the shared driveway at 2923 Los Amigos was outside the curtilage of the home and that probable cause existed for officers to search the Ford F-150. Trujillo's Motion to Reconsider, Doc. 86, is therefore denied.

IT IS SO ORDERED.

/s/Kenneth J. Gonzales___________________
CHIEF UNITED STATES DISTRICT JUDGE


- Please note that this document has been electronically filed. To verify its authenticity, please refer to the Digital File Stamp on the NEF (Notice of Electronic Filing) accompanying this document. Electronically filed documents can be found on the Court's PACER public access system.