**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

UNITED STATES OF AMERICA,

Plaintiff,

v. No. 25-CR-549 KG

RUBEN JOSE TRUJILLO,

Defendant.

**MEMORANDUM OPINION AND ORDER GRANTING IN PART DEFENDANT'S MOTION TO EXCLUDE OR LIMIT TESTIMONY OF GOVERNMENT EXPERT SYDNEY REDNOUR AND REQUEST FOR DAUBERT HEARING**

This matter comes before the Court on Defendant Ruben Jose Trujillo's Motion to Exclude or Limit Testimony of Government Expert Sydney Rednour and Request for Daubert Hearing, Doc. 97, and the United States' Response, Doc. 100. The Court held a *Daubert* hearing on October 8, 2026. Having considered the parties' briefing, testimony, oral arguments of counsel, and the relevant law, and for the reasons stated at the hearing, the Court grants the motion in part.

## *I. Background*[1]

The United States filed a "Notice of Expert Witness Testimony," seeking to introduce at trial firearm toolmark evidence collected after the robbery of a Family Dollar in Vado, New Mexico, on October 28, 2024. Doc. 33 at 1; Doc. 100 at 2. The United States plans to call

---

[1]The Indictment charges Trujillo with four counts of Interference with Commerce by Robbery, three counts of Using Carrying, and Brandishing a Firearm During and in Relation to a Crime of Violence, and Possessing and Brandishing a Firearm in Furtherance of Such Crime, one count of being a Felon in Possession of a Firearm and Ammunition, and one count of Using, Carrying, and Brandishing a Firearm During and in Relation to a Crime of Violence, and Possessing and Brandishing a Firearm in Furtherance of Such Crime; Discharging Said Firearm. *See generally* Doc. 9.

Sydney Rednour, a firearm and toolmark examiner, as an expert witness. *Id.* Ms. Rednour will testify that the cartridge case found on the floor of the Family Dollar store and the bullet lodged in a wall of the store are consistent with the .45 caliber Hi-Point pistol found during a search of Trujillo's Ford F-150 vehicle conducted one day after the robbery. Doc. 100 at 1. Trujillo moves under Federal Rules of Evidence 104(a) and 702 to exclude or limit the testimony. Doc. 97 at 1.

Ms. Rednour is an FBI Physical Scientist-Forensic Examiner who specializes in the firearm and toolmark discipline and works at the FBI Laboratory's Firearms-Toolmarks Unit in Quantico, Virginia. Doc. 100 at 1. Her duties are to "receive evidence relevant to the firearms/toolmarks discipline, examine submitted evidence, document/record detailed notes, write and issue laboratory reports, and provide testimony to findings when requested. Respond to shooting incidents to perform a Shooting Incident Reconstruction." Doc. 100-1 at 1. She has previously testified in two federal trials in her capacity as a firearms/toolmarks examiner. *Id.* at 2. She most recently testified in a federal trial in July 2025 in Muskogee, Oklahoma. *Id.*

She is trained in the Association of Firearms and Tool Mark Examiners' ("AFTE") method of firearm examination. Doc. 100-1 at 1. The AFTE theory hypothesizes that the firearm manufacturing process leaves behind unique microscopic marks on each firearm. Draft Transcript of Oct. 8, 2026, Hearing at 100: 8–15.[2] Under this method, examiners evaluate whether there is "sufficient agreement" of a combination of individual, class, and sub-class characteristics. *Id.* at 99:8–16. "Class characteristics" are features common to similar makes and models of firearms. *Id.* at 115:25–116:17. "Subclass characteristics" are toolmarks "which

[2]The Court's citation to the hearing transcript refers to the court reporter's original, unedited version. Any final transcript may contain some differences in page and line numbers.

could be repeated on different items manufactured during the same time frame." *Id.* at 117:21–22. Lastly, "individual characteristics" are "random imperfections or irregularities on tool surfaces produced by either the manufacturing processes or continued use of a firearm." *United States v. Briscoe*, 703 F. Supp. 3d 1288, 1299 (D.N.M. 2023) (quoting Adina Schwartz, *A Systemic Challenge to the Reliability and Admissibility of Firearms and Toolmark Identification*, 6 Colum. Sci. & Tech. L. Rev. 1, 5 (2005)). If there is "sufficient agreement" of these characteristics, the examiner may determine that a particular firearm is the source of the toolmarks transferred to a bullet or cartridge case. Draft Tr. at 99:8–100:19.

The United States offers that Ms. Rednour will testify to the process of firearm identification and discuss how "certain surfaces of a firearm . . . because of their particular manufacturing and subsequent wear and tear, have tiny individual imperfections and irregularities at the microscopic level" that "are transferred to different parts of the fired ammunition." Doc. 100 at 3. Ms. Rednour will testify to her conclusion that the cartridge case found on the floor of the Family Dollar "was fired from the .45 Auto caliber Hi-Point pistol." Doc. 100 at 2. She will opine that the .45 caliber bullet found in the wall of the Family Dollar is "physically consistent with a .45 Auto caliber bullet." *Id.*

Trujillo argues that the Court should exclude Ms. Rednour's testimony as unreliable. Doc. 97 at 4. He contends that the AFTE method is "not scientifically valid because its decisive step—whether toolmarks are in 'sufficient agreement' to declare a match—is not governed by any shared, objective standard." *Id.* The United States opposes the motion. *See generally* Doc. 100.

## *II. Legal Standard*

"The proponent of the expert testimony has the burden of showing that it is admissible by a preponderance of the evidence." *Briscoe*, 703 F. Supp. 3d at 1297 (quoting *Daubert v. Merrell Dow Pharm.*, 509 U.S. 579, 592 n.10 (1993)). "[A] district court, when faced with a party's objection [under Rule 702], must adequately demonstrate by specific findings on the record that it has performed its duty as gatekeeper." *United States v. Roach*, 582 F.3d 1192, 1206 (10th Cir. 2009) (citation modified). Federal Rule of Evidence 702 provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> b) the testimony is based on sufficient facts or data;
> c) the testimony is the product of reliable principles and methods; and
> d) the expert has reliably applied the principles and methods to the facts of the case.

*United States v. Medina-Copete*, 757 F.3d 1092, 1101–02 (10th Cir. 2014).

"The district court generally must first determine whether the expert is qualified by knowledge, skill, experience, training, or education to render an opinion." *United States v. Avitia-Guillen*, 680 F.3d 1253, 1256 (10th Cir. 2012) (citation modified). Rule 702 then requires the court to "ensure that any and all scientific testimony or evidence is not only relevant, but reliable." *Daubert*, 509 U.S. at 589. This obligation involves a two-part inquiry. First, the court must "determine if the expert's proffered testimony has a reliable basis in the knowledge and experience of his or her discipline." *Norris v. Baxter Healthcare Corp.*, 397 F.3d 878, 884–85 (10th Cir. 2005) (citation modified). "In making this determination, the district court must decide whether the reasoning or methodology underlying the testimony is scientifically valid." *Id.* (quoting *Daubert*, 509 U.S. at 592–93). "Second, the district court must further inquire into

whether proposed testimony is sufficiently relevant to the task at hand." *Id.* (citation modified). The court may not "rest[] its decision solely on other courts admitting firearm toolmark identification evidence." *United States v. Hunt*, 63 F.4th 1229, 1243 (10th Cir. 2023).

## *III. Analysis*

The Court concludes that (A) Ms. Rednour is qualified to testify, (B) the AFTE methodology is reliable, and (C) the expert testimony is relevant.

### *A. Ms. Rednour is qualified to testify.*

Ms. Rednour is qualified to testify as an expert on firearm and toolmark identification. Trujillo has not raised an objection to Ms. Rednour's qualifications to provide expert testimony under Rule 702. The United States asserts that Ms. Rednour is qualified by knowledge, skill, training, and education. Doc. 100 at 11. The Court agrees. Ms. Rednour, a Physical Scientist-Forensic Examiner, has spent six years in the Firearms and Toolmarks Unit in the FBI's Laboratory Division. Doc. 100 at 11. Her duties include receiving and examining firearm and toolmark evidence submitted to the FBI Laboratory, issuing laboratory reports, and providing testimony. Doc. 100-1 at 1. She has received training in the AFTE method. Doc. 100-1 at 1. Ms. Rednour has also previously testified in two federal trials in her capacity as a firearms/toolmarks examiner. *Id.* At the *Daubert* hearing, Ms. Rednour testified that she has worked on "[a]lmost 300 cases" as a physical scientist forensic examiner. Draft Tr. at 95:4–6. She also stated that she must complete "at least 8 hours of continuing education in firearms and toolmarks every year." *Id.* at 95:7–12. Having considered Ms. Rednour's education, practical experience, training, and knowledge, the Court concludes she is qualified to testify regarding firearm and toolmark identification.

### *B. The AFTE methodology is reliable under* **Daubert.**

Next, the Court concludes that the AFTE methodology is sufficiently reliable and is, therefore, admissible under Federal Rule of Evidence 702. To establish whether an expert's methodology is sufficiently reliable, courts consider the following non-exhaustive *Daubert* factors: "(1) whether the methodology can be tested; (2) whether it is subject to peer review and publication; (3) the known or potential error rate; (4) the existence and maintenance of standards to control the methodology's application; and (5) the general acceptance in the relevant scientific community." *Hunt*, 63 F.4th at 1238 (citation modified); *see also Daubert*, 509 U.S. at 593–94.

#### 1. Whether the methodology can be tested.

Several courts, including this one, have recognized that the AFTE method can be tested. *See, e.g.*, *Hunt*, 63 F.4th at 1248; *Briscoe*, 703 F. Supp. 3d at 1302; *United States v. Taylor*, 663 F. Supp. 2d 1170, 1176 (D.N.M. 2009). The United States directs the Court to a presentation given by Ms. Rednour which references studies of the firearm/toolmark discipline, including the 2009 National Research Council of the National Academy of Sciences Report, the 2016 President's Council of Advisors on Science and Technology Report, and the 2021 Ames Laboratory Study discussed at length in *Hunt*. 63 F.4th at 1237–38; Doc. 100 at 13, Doc. 100-4 at 34. These studies alone demonstrate that the AFTE method can be and has been tested.

Ms. Rednour also testified that quality assurance tests are conducted where samples are given to a secondary examiner to test whether that examiner will arrive at the same conclusion as the primary examiner. Draft Tr. at 108:3–12; 113:4–15; 118:13–20. However, on cross-examination, Ms. Rednour explained that when conducting a quality assurance test on a particular sample, the secondary examiner does not have to reference the same areas of a bullet or cartridge in their examination, nor do they have to rely on the same toolmarks to reach their

conclusion. *Id.* at 147:1–15. While Ms. Rednour's testimony calls into question whether an identification can be reproduced, the Court is nevertheless persuaded that the AFTE method can be tested and that this factor weighs in favor of reliability.

**2. Whether the theory has been subjected to peer review and publication.**

"[S]ubmission to the scrutiny of the scientific community . . . increases the likelihood that substantive flaws in methodology will be detected." *Daubert*, 509 U.S. at 593. "The fact of publication (or lack thereof) in a peer reviewed journal . . . will be a relevant, though not dispositive, consideration in assessing the scientific validity of a particular technique or methodology on which an opinion is premised." *Id.* at 594. Here, the United States offers peer-reviewed research articles published in the AFTE Journal, as well as the "(1) Forensic Science International, (2) Journal of Forensic Sciences, (3) National Institute of Standards and Technology, (4) National Institute of Justice[.]" Doc. 100 at 13; *see also* Draft Tr. at 108:21–109:25. This factor weighs in favor of reliability.

**3. The known or potential error rate.**

The central question for the rate-of error factor is the frequency of false positives—how often an AFTE examiner will testify that a bullet or cartridge came from a particular firearm when, in fact, it was not fired from that firearm. *See Daubert*, 509 U.S. at 594 (citing case where studies examined rate of misidentifications or false eliminations).

The United States directs the Court to studies showing "a false positive error rate that can only be fairly characterized as remarkably low—often between 0 and 1 percent." Doc. 100 at 14; Doc. 100-4 at 34–35. Ms. Rednour's testimony echoed the United States' estimate. *See* Draft Tr. at 110:18 (Ms. Rednour stating that "based on the studies [the error rate] it's generally between zero to one percent"). She also noted "it's likely that in real casework [the error rate] could be

lower than this because of the quality assurance process." *Id.* at 110:16–18. According to Ms. Rednour, the FBI Laboratory has "verifications done, as well[] as technical and administrative reviews done on all of the casework. Whereas in these validity tests it's just the sole examiner making their decision." *Id.* at 110:13–16.

Trujillo relies on *United States v. Adams*, 444 F. Supp. 3d 1248, 1264 (D. Or. 2020). Doc. 97 at 5. There, the Court examined studies that showed the false-positive rate to be closer to 1.5%–2.2. *See Adams*, 444 F. Supp. 3d at 1264. Considering the rate of error "in terms of wrongful convictions," the court noted that a "1.5 percent error rate would mean that 1 in 67 convictions were wrong. And 2.2 percent would mean that 1 in 46 convictions were wrong." *Id.* The court also opined that "[t]here seems to be no real negative consequence for reaching an answer of inconclusive." *Id.* at 1265. An inconclusive result occurs when there is not a "substantial quantity" of individual characteristics to determine whether a bullet or cartridge was fired from a particular firearm. Draft Tr. at 118:6–11. Here, Ms. Rednour acknowledged on cross-examination that inconclusive results are not factored into the error rate. *Id.* at 149:12–17. Trujillo argues that the Court should infer from Ms. Rednour's testimony that the error rate may be higher than the United States suggests.

This factor weighs in favor of admissibility as it is more likely than not that the error rate is low. *See Briscoe*, 703 F. Supp. 3d at 1297 ("The proponent of the expert testimony has the burden of showing that it is admissible by a preponderance of the evidence."). Ms. Rednour's testimony regarding the FBI Laboratory's quality assurance process, including that examiners submit their results for verification even where they determine there is not a match if the result is "based on a small measurable difference in class characteristics," supports the Court's determination in favor of reliability. Draft Tr. at 162:12–19. Furthermore, Trujillo's suggestion

that the failure to account for inconclusive responses in error rates results in higher rates of error is unavailing. The Court is not persuaded that inconclusive responses should be treated as errors. When considering the frequency of false positives, courts examine how often an AFTE examiner will incorrectly *testify* that a bullet or cartridge came from a particular firearm. If an examiner arrives at an inconclusive determination, it can be assumed that the evidence will not be used to support testimony that a bullet or cartridge came from a particular firearm. Inconclusive responses, therefore, do not affect the reliability of the testimony or mislead the jury. As a result, this factor weighs in favor of admissibility.

**4. The existence and maintenance of standards to control the methodology's application.**

Courts in this district uniformly agree that although the AFTE theory is the controlling standard in toolmark identification, it is inherently subjective. *See, e.g.*, *Briscoe*, 703 F. Supp. 3d at 1304 ("There is no specific guidance as to what constitutes "sufficient agreement" other than that it means the examiner has determined that the marks are unlikely to have come from different guns."); *Taylor*, 663 F. Supp. 2d at 1177 ("Arguably the biggest obstacle facing any firearms examiner is that there is no such thing as a 'perfect match.' Even two bullets known to have been fired consecutively from the same gun will display some differences.").

The United States argues that "the subjective aspects of determining a match are nevertheless 'based on empirical observations of physical traits that are measurable and reproducible for objective inspection[.]'" Doc. 100 at 14–15. Ms. Rednour testified that the FBI Laboratory Firearm/Toolmark Unit is subject to both internal and external controls. Draft Tr. at 111:9–113:22. She stated that the FBI Laboratory is accredited by the American National Standards Institute National Accreditation Board, a third party outside of the FBI. *Id.* at 111:25–112:2. As well, she testified that the International Organization for Standardization "create[s]

standards that laboratories follow" including the FBI Laboratory. *Id.* at 111:14–20. In addition to external standards, Ms. Rednour noted that within the FBI Laboratory examiners follow rules from the Department of Justice and the "ASTR," both of which outline specific language that examiners must use when testifying. *Id.* at 112:2–9. Lastly, Ms. Rednour described standard operating protocols for handling evidence, examining samples, and conducting quality assurance tests. *Id.* at 113:4–19.

Ms. Rednour's testimony does not tell the Court whether there are uniform standards examiners use to determine *whether there is a match*. Indeed, on cross-examination, Ms. Rednour acknowledged that an examiner's conclusion is based on their own subjective opinion. *Id.* at 145:20–146:2; *see also id.* at 142:11–25 (Ms. Rednour explaining that she arrives at sufficient agreement "based on my experience and training of looking at known matchings and known non-matches to establish that threshold"). She also conceded that, when conducting a quality assurance test, the secondary examiner does not have to examine the same toolmarks to conclude there is "sufficient agreement." *Id.* at 147:1–10. Given that the standard for determining when there is a match is inherently vague, this factor weighs against reliability.

**5. Whether the technique has achieved general acceptance in the relevant scientific community.**

The AFTE method appears to be widely accepted by trained firearm examiners. *See Hunt*, 63 F.4th at 1249; *Briscoe*, 703 F. Supp. 3d at 1307; *Taylor*, 663 F. Supp. 2d at 1178. Ms. Rednour testified that besides the AFTE, professional organizations including the American Academy of Forensic Sciences, the American National Standards Institute National Accreditation Board, and the National Institute of Science and Technology all perform research in the firearms and toolmarks discipline. Draft Tr. at 114:5–14. She also testified that "[m]any universities have programs where they teach forensic science in the firearms and toolmarks

discipline, and it's been accepted in court or about 100 years now." *Id.* at 114:14–17. To the extent courts have expressed concern that the AFTE method has faced criticism from scientists outside the field of toolmark examination, "[t]echniques do not need to have universal acceptance before they are allowed to be presented before a court." *United States v. Hunt*, 464 F. Supp. 3d 1252, 1260 (W.D. Okla. 2020) (quoting *United States v. Romero-Lobato*, 379 F. Supp. 3d 1111, 1122 (D. Nev. 2019)). This factor weighs in favor of reliability.

The Court finds that four of the five *Daubert* factors weigh in favor of reliability and, therefore, concludes that the AFTE methodology is sufficiently reliable.

### *C. The expert testimony is relevant*

As a final matter, the Court concludes that the expert testimony is relevant. Rule 702(a) requires that the expert testimony must more likely than not "help the trier of fact to understand the evidence or to determine a fact at issue." The United States argues that Ms. Rednour will opine that the Hi-Point pistol found in Trujillo's truck the day after the robbery is the same gun used in the robbery. Doc. 100 at 17. Trujillo does not raise any argument regarding the relevance of the toolmark evidence. The Court is persuaded that Ms. Rednour's testimony would be relevant to the jury's determination of whether Trujillo not only possessed but also in fact discharged a firearm in relation to the robbery of the Family Dollar. *See, e.g.*, *Briscoe*, 703 F. Supp. 3d at 1301 (concluding toolmark evidence was relevant to carjacking); *Taylor*, 663 F. Supp. 2d at 1180 (D.N.M. 2009) (admitting firearm identification testimony).

Moreover, "[a] judge assessing a proffer of scientific testimony under Rule 702 should also be mindful of other applicable rules." *Daubert*, 509 U.S. at 595. Federal Rule of Evidence 403 requires courts to exclude otherwise admissible evidence "if its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the

jury . . . ." Here, the risk of the jury mistakenly treating Ms. Rednour's expert testimony as evidence of the truth of the facts asserted may be abated by a limiting instruction if requested by the parties. Further, the Court will prohibit Ms. Rednour from expressing her findings in terms of absolute or 100% certainty. Thus, the testimony's probative value is not substantially outweighed by the risk of misleading the jury or juror confusion.

***IV. Conclusion***

For the reasons more fully stated on the record at the hearing, Trujillo's motion, Doc. 97, is granted in part. The Court concludes Ms. Rednour, based on her knowledge, skill, training, and experience, is qualified as an expert under Rule 702 to testify to the process of firearm identification, and whether a bullet, cartridge case, or other ammunition component was fired from a particular type of firearm.

The Court further concludes that the AFTE method satisfies the reliability test under *Daubert*, and Ms. Rednour's testimony is relevant to helping the jury determine whether Trujillo possessed and discharged the Hi-Point pistol during the robbery of the Family Dollar.

The Court will confine Ms. Rednour to the limitations set forth in guidance issued by the Department of Justice. *See* Doc. 100-6 at 3. Ms. Rednour must refrain from expressing her findings in terms of absolute or 100% certainty, or any other statistic or numerical degree of probability, except when based on relevant and appropriate data, or use expressions such as "reasonable degree of scientific certainty," "reasonable scientific certainty," or similar assertions like "to the exclusion of all other firearms," or that "examinations in the forensic firearms/toolmarks discipline are infallible or have a zero-error rate." *Id.* She may not testify that any cartridge case or bullet fragment is a "match" to other casings or bullet fragments.

Ms. Rednour may testify as to her process of examining the recovered casings and bullets, the theory of toolmark analysis and how firearms can leave markings on bullets and shell casings, the process she undertook to compare the casings and bullet fragments, and that she found certain areas of comparison that are similar.

IT IS SO ORDERED.

/s/Kenneth J. Gonzales
CHIEF UNITED STATES DISTRICT JUDGE

- Please note that this document has been electronically filed. To verify its authenticity, please refer to the Digital File Stamp on the NEF (Notice of Electronic Filing) accompanying this document. Electronically filed documents can be found on the Court's PACER public access system.